IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM ERIK MONROE,

                              Petitioner,

            vs.

D. G. ADAMS,

                              Respondent.

Case No. 2:08-cv-00558-JKS


MEMORANDUM DECISION


Petitioner, William Monroe, a state petitioner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Monroe is currently in the custody of the California Department of Corrections, incarcerated at the California State Prison, Corcoran in Corcoran, California.  Respondent has filed an answer and Monroe has filed a traverse.

STATEMENT OF THE FACTS[1]

        On the evening of July 13, 2002, a robbery occurred at Laronda Lauderdale's apartment on Porter Street in Vallejo. Lauderdale was at home with Devante, her 11-year-old son, and James, the 13-year-old son of her roommate and cousin Shawana Ward. At about 10:30 p.m., a man claiming to be "John" or "Johnny" knocked on the door. Believing it to be his uncle, James unlocked the door before Lauderdale could stop him. The man pushed into the room, bared a handgun, and asked if Shawana Ward was

---

        [1]  The following facts are taken verbatim from the opinion of the California Court of Appeal, Third Appellate District. (Lodged Doc. No. 1).  Under Antiterrorism and Effective Death Penalty Act of 1996, the determination of these facts is presumed to be correct, and Monroe has the burden of rebutting that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

there. Learning she was not in the apartment, the man ordered Lauderdale and the two boys onto the ground in Lauderdale's room. The robber called James back into the living room and tied his hands with a fan extension cord. He then did the same to Devante using the cord to the boys' Playstation. He also pulled James's headband down over his eyes because James was "looking too much." Lauderdale pleaded for the man not to hurt the children. The robber said he would not; it was not about them, it was about Ward-she "owe[d] people money."

Thereupon, the robber placed a gun to Lauderdale's head, told her he "just wanted the money," and ordered her into Ward's room to find it. From the living room, James called out that there was money in his mother's make-up case. Lauderdale found $600 there, but the robber demanded more and threatened to start shooting people. To get him out of the apartment, Lauderdale gave him an additional $300 from her own coat pocket. As he was departing, the robber told James to "[t]ell Shawana I'm going to kill her." Lauderdale immediately ran to a neighbor's house and called the police.

Officer Kyle Wylie, who responded to the call, testified that all three occupants were very upset. The victims did not know the robber, but during the 10 to 12 minutes he was in the apartment they noted he had a gold tooth, a small beard, and very small freckles on his face. James, who had managed to wiggle the headband from his eyes, thought he had "seen him somewhere before."

Two or three weeks later, while at his aunt's home in Vallejo, James saw [Monroe] on the street. James immediately recognized him as the man who had robbed them and quickly reported the discovery to Lauderdale. A week later, Lauderdale was at James's aunt's house to pick him up. James again saw [Monroe] and this time pointed him out to Lauderdale. She agreed he was the robber. Lauderdale and James subsequently identified [Monroe] through independent police line-ups and at trial. James noted the freckles around [Monroe's] nose and the small beard. Also, [Monroe] has three gold teeth, one of which is prominently visible when he speaks. Both James and Lauderdale expressed "[n]o doubt whatsoever" that [Monroe] was the robber.

Following arrest, [Monroe] made several statements to the Vallejo Police Department. The first came during transport by Officer Nathan Ketchum. After repeated inquiries from [Monroe] as to why he had been arrested, Officer Ketchum informed him that it was for robbery. [Monroe] blurted out, "Oh, that happened several months ago." Subsequently, [Monroe] made a detailed (if contradictory) statement to Vallejo Police Detective Lee Horton. [Monroe] initially claimed to have been at his wife Latasha's house on July 13, but later admitted having been at the Porter Street apartments. FN2. According to [Monroe's] statements, he had gone to see "John" at another apartment in the Porter Street complex. Also known as "Little" or "Froggy," John was Shawana Ward's boyfriend. [Monroe] had dated Ward in the past and knew that Ward was having problems with John. [Monroe] did not know Lauderdale.

FN2. [Monroe] claimed he had been first at a birthday party for his daughter with a former wife in South San Francisco. However, his daughter's birthday was July 12, and he could not remember exactly what day the party had been.

According to appellant, John had sold [Monroe] bad crack cocaine, and [Monroe] wanted a refund of $1,000 to $1,200. At first, [Monroe] claimed John had gone upstairs alone, returning with $600. Then, [Monroe] admitted he had accompanied John inside the apartment "to get the money." Detective Horton obtained [Monroe's] description of the apartment: it had two bedrooms, a sliding door in the back, a kitchen to the right and the living room next to it, and beige carpeting. The description was consistent with police pictures of the apartment. [Monroe] denied having seen children in the apartment, but recalled a "dark-complected, chunky black female" there; Officer Horton described Lauderdale as "a heavy-set African-American female." [Monroe] claimed he had not brought a gun, saying he did not need one because he was on good terms with John. However, [Monroe] also said he had been about to fight John at one point. Detective Horton felt it was unusual to attempt to collect on a bad drug deal without bringing a gun. Finally, [Monroe] admitted having received six $100 bills from the apartment. [Monroe] concluded the interview by saying that everything he had just said "was a lie."

## PROCEDURAL HISTORY/BACKGROUND

A jury found Monroe guilty of:  residential robbery in the first degree; two counts of false imprisonment by violence accompanied by personal firearm use, and; one count of possession of a firearm by a felon.  The jury also found that Monroe had suffered four prior prison terms and one prior strike conviction for a robbery.  Monroe was sentenced to thirty-one years, four months in state prison.

Monroe timely appealed his conviction to the California Court of Appeals, Second Division, which affirmed his conviction in a reasoned, unreported decision on May 24, 2006. Monroe did not seek review of this decision in the California Supreme Court.

On February 26, 2007, Monroe filed a petition for writ of habeas corpus in the Solano County Superior Court, which was denied on April 13, 2007, in a written decision.[2]  On April 30, 2007, Monroe filed a petition for writ of habeas corpus in the California Court of Appeal, which

---

[2]  Lodged Docs. G, H.

was summarily denied on July 6, 2007.[3]  On July 13, 2007, Monroe filed a petition for review in

the California Supreme Court, which was summarily denied on September 25, 2007.[4]

On March 12, 2008, Monroe filed a petition for writ of habeas corpus in this Court.  In

his petition Monroe raises five grounds for relief:  the trial court erred by denying his motion for

a new trial; there was insufficient evidence to support his conviction; he received ineffective

assistance of trial counsel; he received ineffective assistance of appellate counsel, and; his

sentence was improper.

Respondent contends that Monroe's sufficiency-of-the-evidence claim and his claim that

his sentence was improper are procedurally barred.  Respondent does not assert that any of

Monroe's claims are unexhausted.

### STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in §

2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time

---

[3]  Lodged Docs. I, J.

[4]  Lodged Docs. K, L.

[5] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[9]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[10]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial

---

[6] *Williams*, 529 U.S. at 412.

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

and injurious effect or influence in determining the outcome.[12]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

In applying this standard, this Court reviews the last reasoned decision by the state court.[14]  State appellate court decisions that affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[15]

Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[16]  This presumption applies to state trial courts and appellate courts alike.[17]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain

---

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[15] *Ylst*, 501 U.S. at 802-03.

[16] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[17] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

whether the state court decision was objectively unreasonable.[18]  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[19]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[20]

DISCUSSION

As noted above, Monroe raises five claims for relief.  For the purposes of clarity and continuity, this Court will address Respondent's assertion that two of Monroe's claims are procedurally barred.  This Court will then address Monroe's remaining claims.

Procedural Bar

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and

---

[18] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[19] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[20] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  This Court notes, however, that the question of the deference to be given summary denials was left open by the Ninth Circuit sitting en banc.  *See Pinholster v. Ayers*, 590 F.3d 651, 663 (9th Cir. 2009) (en banc); *Richter v. Hickman*, 578 F.3d 944, 951 n.5 (9th Cir. 2009) (en banc).  The issue is presently pending before the Supreme Court *sub nom, Harrington v. Richter*, No. 09-587.

adequate to support the judgment."[21]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[22]  "[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default."[23]  A discretionary state procedural rule can be firmly established and regularly followed, so as to bar federal habeas review, even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.[24]

Under California law, contentions that could have been raised during direct appeal, but were not, generally cannot be renewed in a petition for habeas corpus.[25]  It has long been the law in California that sufficiency of the evidence to warrant conviction is not a proper issue for consideration in a habeas corpus proceeding.[26]  In his petition for habeas corpus in the Solano County Superior Court, Monroe asserted (among other grounds for relief) that there was insufficient evidence to support his conviction and that the calculation of his sentence was unconstitutional.  The Solano County Court rejected these claims, citing *In re Dixon*

---

[21] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[22] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[23] *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

[24] *Beard v. Kindler*, 558 U.S. ___, 130 S. Ct. 612, 618 (2009).

[25] *In re Terry,* 484 P.2d 1375, 1387 (Cal. 1971).

[26] *Ex parte Lindley*, 177 P.2d 918, 926-27 (Cal. 1947).

(1953) 41 Cal.2d 756, 759, and found that they should have been raised in Monroe's direct appeal.

This Court agrees with Respondent that, because Monroe's claims were defaulted in state court on an adequate and independent state ground, they will not be considered in federal habeas proceedings unless he can demonstrate cause for the default and actual prejudice.[27]  To prove a fundamental miscarriage of justice, Monroe must show that a constitutional violation probably resulted in his conviction despite his actual innocence.[28]  Although at the gateway stage the petitioner need not establish his innocence as an "absolute certainty," Monroe must demonstrate that more likely than not, no reasonable juror could find him guilty beyond a reasonable doubt.[29] Monroe has failed to demonstrate either cause justifying his failure to raise these issues on appeal or actual prejudice.  Accordingly, this Court finds that these claims are procedurally barred.[30]

---

[27] *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[28] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.")

[29] *House v. Bell*, 547 U.S. 518, 538 (2006).

[30]  This Court also notes that even if these claims were not procedurally barred, they would be without merit.  As will be discussed below, the prosecution submitted substantial evidence, which if believed, would allow a jury to find that Monroe had committed the robbery. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see McDaniel v. Brown*, 558 U.S. ___, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).  Furthermore, the record shows that the trial court imposed the mid-term sentence on all of the counts in order to avoid running afoul of *Blakely v.Washington*, 542 U.S. 296 (2004).  2/24/05 RT 5.  The court also imposed enhancements for firearm use and previous convictions, something which Monroe seems to ignore in his petition

<u>Trial Court Erred by Denying Motion for a New Trial</u>

Monroe claims that the trial court erred by denying his motion for a new trial on the basis that his counsel failed to investigate and interview a potential alibi and a claim of third party culpability.  Essentially, Monroe claims that the trial court erred by not granting his motion for a new trial so he could present this evidence to the jury.

To the extent that Petitioner raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[31]  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[32]  This principle applied to federal habeas review of state convictions long before AEDPA.[33]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme

---

to this Court.

[31] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[32] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[33] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

court's interpretation of the law.[34]  It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[35]

A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[36]  This is especially true where the highest court in the state has denied review of the lower court's decision.[37]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[38]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[39]  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[40]  Monroe's claim to this Court constitutes a state-law claim, i.e., that

---

[34] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[35] *Id.* at 76.

[36] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[37] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[38] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[39] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[40] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006); *Smith v. Philips*, 455 U.S. 209, 221 (1982); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

the California courts erroneously applied state procedural law regarding the grant of a new trial

to his case.  Accordingly, because the California Court of Appeals held that Monroe's claim was

without merit, and he has failed to show an error of constitutional dimension, his claim is beyond

the purview of this Court.

Trial Counsel Was Ineffective

Monroe claims that he was denied the effective assistance of counsel during his trial

because his counsel, Thomas Healy ("Healy"), did not investigate a third-party culpability

defense and a possible alibi for the night of the crime.  Monroe raised this claim on direct appeal

and again in his habeas petition to the Solano County Superior Court; both rejected the claim.

I.  Third Party Culpability Defense

According to Monroe, a man named Dennis Merrida, who is the cousin of Monroe's

girlfriend, Cherise Blake, informed Monroe that Chris "Peppermint"/ "Red" Williams

approached Merrida in August 2002 to apologize for taking money and drugs from Shawana

Ward.  Apparently, Williams was unaware that Merrida was related to Ward's boyfriend, John,

and that the victims were therefore Merrida's "people."  Merrida believed that Ward wanted to

frame Monroe because she was jealous because Monroe was dating Blake.  Merrida also asserted

he disliked Monroe after he involved Blake in an earlier case.

> Although it is unclear, it appears that Merrida and Monroe discussed this matter
> in Solano County Jail in 2003, when Merrida was also awaiting trial for robbery.
> Merrida was judged incompetent to stand trial in April 2003, and was confined to
> Atascadero State Hospital from June through sometime before December 18, 2003, when
> criminal proceedings were reinstated.  Merrida was convicted of attempted robbery.  He
> has two previous convictions for robbery and one for escape.[41]

---

[41] *Monroe*, 2006 WL 1428240 at *3.

Monroe relayed Merrida's information to Healy in mid-July 2003, right before Healy was to leave on a three-week vacation.  Healy asked his investigator to follow up on this lead, but six weeks later (one week before trial) Healy discovered the investigator had not met with Merrida. Healy was concerned about postponing the trial because by that time Monroe had been in jail for over a year.  Healy discussed the matter with Monroe, who told Healy that he believed that the prosecution's witnesses would not appear or would change their story.  Healy interpreted Monroe's remarks as tacit consent that he was willing to proceed to trial.

After he was convicted and had been appointed new counsel, Monroe motioned for a new trial on the basis that Healy was ineffective for failing to pursue a third party culpability defense and a possible alibi.  The trial court found that counsel's decision to proceed to trial without investigating Merrida's statements as reasonable.  Misunderstanding Monroe to have suspected that his own witnesses would not appear or would change their stories, the trial court found that reasonable counsel could presume that using such a witness "might not be the best possible defense" and could thus reasonably decide to proceed to trial on another theory.

Monroe moved for reconsideration, noting that the court had misunderstood his statement regarding the prosecution's witnesses deciding not to appear or changing their testimony.  The trial court again declined to order a new trial finding that Healy's strategy of impeaching the prosecution's witnesses was "the strongest defense compared to the other defenses that had been proposed, including third party culpability."  The court ruled that even if counsel had continued the trial and investigated Merrida's statement, the result would have been the same.[42]

---

[42] *Id.* at *4.

On direct appeal, the California Court of Appeals found it unnecessary to determine whether Healy's trial performance was deficient because it concluded that Monroe did not show that the failure to investigate Merrida's statements had affected the outcome in any way. The Court of Appeals noted the overwhelming evidence against Monroe, along with the inconsistencies in the proffered third-party-culpability defense, and the fact that Merrida would have been easily impeached for bias and unreliability. Because the California Court of Appeals determined that this claim was without merit, this Court may only grant relief to Monroe if the California Court of Appeal's decision was contrary to established federal law or involved an unreasonable determination of the facts.[43]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[44] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[45] Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[46] An analysis that focuses

---

[43] Monroe also raised this claim in his petition for habeas corpus to the Solano County Superior Court. The Court rejected his claim, holding that since Monroe's claim of ineffective assistance for failure to investigate a third party culpability defense had been raised and rejected on direct appeal, he could not raise it again on habeas corpus. Accordingly, the California Court of Appeals provided the last reasoned decision regarding this claim.

[44] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[45] *Id.*

[46] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

14

"solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[47]  In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court can have even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[48]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[49]

Like the California Court of Appeals, this Court will confine its analysis to whether Monroe has shown the requisite prejudice–that  had counsel investigated the possible third party culpability defense, there is a reasonable probability the result of the proceeding would have been different.[50]

---

[47] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[48] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420 (2009).

[49] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[50] The *Strickland* test for ineffective assistance of counsel requires a criminal defendant to show both a deficient performance and prejudice.  Arguably, counsel's failure to investigate

This Court agrees with the California Court of Appeals that the evidence against Monroe was overwhelming.  The record shows that victims Lauderdale and James provided detailed descriptions of the robber that matched Monroe, including his gold tooth, beard, and freckles. They also independently identified Monroe at independent police line-ups and in open court.  In an interview with police, Monroe indicated that he had been at the scene of the crime, described the inside of Ward's apartment and admitted to receiving the same amount of money that was taken during the robbery.  In fact, Monroe's statement to the police that he was only at the scene to collect money for a bad drug deal was entirely consistent with the victims' claims that Monroe stated he was not after them, but was after James' mother because she owed Monroe money.

The evidence of third party culpability, supported by Merrida's statement, was also very weak.  Merrida's proffered statement was muddled, based entirely on hearsay, and had no way of being corroborated.[51]  Furthermore, it is almost certain that Merrida's testimony would have been impeached on a number of different grounds: Merrida was related to Monroe's girlfriend and had been previously convicted of robbery and escape.  Furthermore, Merrida had been found incompetent to stand trial in April 2003 and was confined to the Atascadero State Mental Hospital until he was found competent in December 2003.  He was subsequently convicted of robbery.  Monroe's two-day trial took place in September 2003, during which time Merrida was

---

Merrida's statements may have constituted deficient performance.  In fact, the trial court noted: "The third party culpability certainly is something that can be a viable defense and should be considered. And if this was a perfect trial, Mr. [Healy's] investigator who investigated that a week before trial, he would have reported and made a decision based on that."  R.T. pp. 2-5. However, this Court need not decide whether counsel's performance was deficient if Monroe is unable to show prejudice.

[51]  Monroe does not contend that Chris "Peppermint"/ "Red" Williams was willing to testify or sign an affidavit verifying the statements he made to Merrida.

16

mentally incompetent and being detained at a state hospital.  Thus, the record is clear that even if Merrida had been able to testify,[52] his testimony would have been highly unreliable and subject to impeachment.  Monroe has failed to show that, had Healy investigated Merrida's statements and presented them during his trial, it is more likely than not that the outcome would have been different.  Monroe has also failed to demonstrate that the decision of the California Court of Appeals was contrary to established federal law or involved an unreasonable determination of the facts.  Accordingly, Monroe is not entitled to relief on this claim.

## II.  Alibi Defense

Monroe also claims that his trial counsel was ineffective for failing to investigate a possible alibi defense.  Monroe claims that on the night of the robbery in Vallejo, he spent the night with his ex-girlfriend, Pearlie Hicks, in South San Francisco in order to attend his daughter's birthday party.  Monroe raised this issue in a motion for a new trial: he testified that he told Healy about this alibi but Healy failed to investigate it, and his newly appointed counsel filed declarations from Monroe and Ms. Hicks in support of the alibi defense.  Given the significant evidence that Monroe had been at the scene of the robbery, the court denied the motion for a new trial and the subsequent motion for reconsideration.

Monroe again raised this claim in his petition for habeas corpus.[53]  The Solano County Superior Court found it unnecessary to determine whether Healy's trial performance was

---

[52] It is entirely unclear whether Merrida was in any condition to offer cogent testimony or whether the hospital would have been able or willing to arrange for him to testify.

[53] Monroe did not raise the alibi defense in his direct appeal to the California Court of Appeals; he raised it for the first time in his petition to the Solano County Superior Court. Rather than find that the claim was procedurally barred (as not raised on direct appeal), the Solano County Superior Court found that it was without merit.

deficient because it concluded that Monroe did not show that the failure to investigate the alleged alibi affected the outcome in any way. The court noted the overwhelming evidence against Monroe including an eyewitness identification and Monroe's statement to police that he was present at the apartment, but only to get a refund of money for a bad drug deal.

Because the Solano County Superior Court determined that this claim was without merit, this Court may only grant relief to Monroe if that decision was contrary to established federal law or involved an unreasonable determination of the facts. In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[54]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[55]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel

---

[54] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct.1411, 1420 (2009).

[55] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003)).

was not ineffective constituted an "*unreasonable* application of federal law [,][which] is different from an *incorrect* application of federal law."[56]

Like the Solano County Superior Court, this Court will confine its analysis to whether Monroe has shown the requisite prejudice–that had counsel investigated the possible alibi defense, there is a reasonable probability the result of the proceeding would have been different.[57]  This Court agrees with the Solano County Superior Court that the evidence against Monroe was overwhelming.  As noted in the previous section, the record shows that victims Lauderdale and James provided detailed descriptions of the robber that matched Monroe, including the gold tooth, beard, and freckles.  They also independently identified Monroe at police line-ups and in open court.  In an interview with police, Monroe indicated that he had been at the scene of the crime, accurately described the inside of Ward's apartment and admitted to receiving the same amount of money that was taken during the robbery.  Monroe also made a statement to the police that he was only at the scene to collect money for a bad drug deal.

Contrastingly, the evidence in support of Monroe's alibi was rather weak.  Monroe's alibi, and his credibility for that matter, would have easily been impeached by his admissions to officers that he was present at the scene of the crime.  Furthermore, Ms. Hicks' declaration that Monroe was with her on the night of the robbery would have also been impeached on the

---

[56] *Harrington v. Richter*, 562 U.S. ---, 131 S. Ct. 770, 785 (2011) (emphasis in the original).

[57] The *Strickland* test for ineffective assistance of counsel requires a criminal defendant to show both a deficient performance and prejudice.  At Monroe's motion for a new trial, Mr. Healy testified that he did not remember Monroe telling him about a possible alibi for the evening of the robbery.  If Monroe never told Mr. Healy about the alibi, then his failure to investigate it would not constitute a deficient performance.  However, this Court need not decide whether counsel's performance was deficient if Monroe is unable to show prejudice.

grounds that she had sustained two prior felony convictions (one of which was for welfare fraud) and that she and Mornoe have a romantic history and share a daughter.  Finally, the alibi itself was inconsistent particularly since Monroe first claimed he was at his wife's house to celebrate his daughter's birthday and later claimed, via the purported alibi witness, that he was with his girlfriend to celebrate his daughter's birthday.

Monroe has failed to show that, had Healy investigated the alibi defense and presented it during his trial, it is more likely than not that the outcome would have been different.  Monroe has also failed to demonstrate that the decision of the Solano County Superior Court was contrary to established federal law or involved an unreasonable determination of the facts. Accordingly, Monroe is not entitled to relief on this claim.

Ineffective Assistance of Appellate Counsel

Monroe next claims that his appellate counsel was ineffective for failing to raise all of these issues on direct appeal.  Monroe raised this ground in his petition for habeas corpus and the Solano County Superior Court rejected it, finding that Monroe had not submitted any evidence that his counsel failed to engage in a thorough review of the case-file, ignored Monroe's requests to raise certain issues or failed to raise the strongest claims.

Because the Solano County Superior Court determined that this claim was without merit, this Court may only grant relief to Monroe if that decision was contrary to established federal law or involved an unreasonable determination of the facts.  As noted above, in order to prevail on this claim Monroe must show that defense counsel's representation was not within the range

of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[58]

In his petition to this Court Monroe has failed to show that his appellate counsel's performance was deficient. The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[59] Since Monroe's claims are without merit, it follows that the failure to raise them does not constitute ineffective assistance of appellate counsel. Furthermore, Monroe has failed to demonstrate that if the issues had been raised, it is likely that he would have had his conviction overturned. Monroe is not entitled to relief on this ground.

## REQUEST FOR AN EVIDENTIARY HEARING

In his petition to this Court, Monroe has also requested that this Court hold an evidentiary hearing. He has also requested that he be appointed counsel in the event of a hearing. The Supreme Court has held that in determining whether an evidentiary hearing is required in a habeas proceeding:

> The appropriate standard . . . is this: Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.[60]

---

[58] *Hill,* 474 U.S. at 57.

[59] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

[60] *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963), *overruled on other grounds Keeny v. Tamayo-Keyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 22 U.S.C. 2254(e)(2) (1996).

The record is clear that Monroe had a full and fair evidentiary hearing in the state court regarding all of the issues raised.  This Court has been presented with all of the facts relevant to the issues before it and Monroe has not demonstrated a need to develop the record further. Therefore, Mornoe's request for a hearing will be denied.

<u>CONCLUSION AND ORDER</u>

Monroe is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Monroes' request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[61]

The Clerk of the Court is to enter judgment accordingly.

Dated: February 1, 2011

_____/s/ James K. Singleton, Jr._____
**JAMES K. SINGLETON, JR.**
United States District Judge

---

[61] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.